**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------- X
RICARDO RUSSELL and ROBERT VILELLA, on their
individual behalf and on behalf of all others similarly
situated,

                                       Plaintiffs,

    -against-

THE CITY OF NEW YORK, a municipal entity;
New York City Police Officers IVAN CALERO
(Shield #9301), in his individual and official
capacity; and "JOHN and/or JANE DOES" Nos. 1,
2, 3, etc. (whose identity are unknown but who are
known to be personnel of the New York City Police
Department), all of whom are sued individually and
in their official capacities.

                                  Defendants.
-------------------------------------------------------------------- X

                                       **COMPLAINT**

                                       **JURY TRIAL**

      Plaintiffs RICARDO RUSSELL and ROBERT VILELLA, by their attorneys,

Beldock Levine & Hoffman LLP, as and for their complaint, allege as follows:

### PRELIMINARY STATEMENT

      1.     This civil rights action seeks redress under 42 U.S.C. § 1983 and New

York State law for injuries PLAINTIFFS sustained from the unconstitutional conduct of

defendants THE CITY OF NEW YORK, New York City Police Officer IVAN CALERO

(Shield #9301), and "JOHN and/or JANE DOES" Nos. 1, 2, 3, etc.

      2.     Plaintiffs additionally seek relief for defendants' recurring abuse of police

authority by interfering with the rights of plaintiffs, their fellow residents, and other

Bronx residents to peaceably assemble by ordering them to not stay in front of or near

their own apartment buildings and by unlawfully arresting them when they ask police

officers why they give such orders.

3.      On or about the early morning hours of June 7, 2014, the defendant police officers arrested PLAINTIFFS without any reasonable suspicion or probable cause to believe that they had engaged in any illegal activity.  RICARDO RUSSELL was arrested after he questioned the defendant police officers for ordering everyone in front of his apartment building at 894 Rogers Place, Bronx, New York, to "go inside" for no reason. Police officers had arrested RUSSELL and his friends and neighbors for similar several times in the past for questioning identical unlawful orders not to stand in front of their residences.  When ROBERT VILELLA attempted to record RUSSELL's unlawful arrest with his cell phone camera, defendant police officers tackled VILELLA from behind and placed him under arrest.  Both PLAINTIFFS were taken to the 41st Precinct where they were falsely charged with Disorderly Conduct.  As a consequence of the defendant police officers' false and unlawful conduct, PLAINTIFFS were imprisoned for approximately seven (7) hours and forced to appear in court approximately four (4) times to defend themselves against baseless criminal offenses, which were ultimately dismissed.

4.      PLAINTIFFS seeks (i) compensatory damages for physical injury, psychological and emotional distress, and financial loss caused by the illegal actions of the defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; (iii)  injunctive relief to halt the New York City Police Department practice of unlawfully ordering persons not to stand in front of their own residences and then arresting them for questioning such baseless orders; and (iv) costs, attorney's fees, and such other and further relief as this Court deems equitable and just.

## JURISDICTION

5.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4), as this action seeks redress for the violation of PLAINTIFFS' constitutional and civil rights.

6.      Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. § 1367(a) over any and all state law claims that are so related to the federal claims that they form part of the same case or controversy.

## VENUE

7.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to PLAINTIFFS' claims took place.

## JURY DEMAND

8.      PLAINTIFFS demands a trial by jury in this action on each and every one of their claims for which jury trial is legally available.

## THE PARTIES

9.      Plaintiff RICARDO RUSSELL ("RUSSELL"), a citizen of the United States, is and was at all times relevant to this complaint a resident of Bronx County, City and State of New York.

10.     Plaintiff ROBERT VILELLA ("VILELLA"), a citizen of the United States, is and was at all times relevant to this complaint a resident of Bronx County, City and State of New York.

11.     Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York.

3

12.     The CITY is authorized by law to maintain a police department, and does maintain the New York City Police Department ("NYPD") which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  The CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers.

13.     Defendants IVAN CALERO ("CALERO") (Shield #9301) and "JOHN and/or JANE DOES" Nos. 1, 2, 3, etc. ("DOES") are NYPD police officers who unlawfully detained, frisked, and arrested PLAINTIFFS without suspicion of any illegal activity, lodged false criminal charges against them, and caused them to be maliciously prosecuted.

14.     Defendants CALERO and DOES acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or officers of the CITY and/or the NYPD.

15.     At the times relevant herein, defendants CALERO and DOES violated clearly established rights and standards under the First, Fourth, and Fourteenth Amendments to the United States Constitution and under equivalent New York State constitutional provisions, of which reasonable police officers in their respective circumstances would have known.

## STATEMENT OF FACTS

16.     PLAINTIFFS are lifetime residents of the Bronx, New York.

17.     PLAINTIFFS reside in separate apartments at 894 Rogers Place, Bronx, New York.

18.     When PLAINTIFFS and other residents of 894 Rogers Place assemble in front of their apartment building they are frequently harassed by police officers from the 41st Precinct who improperly tell them that they cannot remain in front of their apartment building and order them to go inside.

19.     The residents of 894 Rogers Place frequently comply with these baseless orders to go inside because they are afraid of being falsely arrested by the police.

20.     During the summer of 2013, RUSSELL's mother and another elderly lady were confronted by police officers who told them and everyone else in front of 894 Rogers Place to go inside.

21.     RUSSELL's mother and the elderly lady told the police officers that they paid to live there and that they would not leave.

22.     The police officers threatened to arrest RUSSELL's mother and the elderly lady, but they eventually left without carrying out their threat.

23.     On a different occasion during the summer of 2013, RUSSELL was confronted by officers who told him he could not remain in front of 894 Rogers Place and ordered him to go inside.

24.     When RUSSELL told the police officers he thought what they were doing was wrong, the police officers gave RUSSELL a summons for disorderly conduct.

25.     That summons was eventually dismissed.

26.     RUSSELL called NYPD Internal Affairs to complain about the police officers misconduct in ordering him and his fellow residents at 894 Rogers Place to go inside for no legitimate reason.

27.     An Internal Affairs officer told RUSSELL that it was improper for police officers to give such baseless orders.

28.     On a separate occasion during the summer of 2013, VILELLA was confronted by police officers who told him he could not remain in front of 894 Rogers Place and ordered him to go inside.

29.     VILELLA told the police officers that this was a free country, that there was no curfew, and that he could lawfully remain in front of 894 Rogers Place.

30.     The police officers responded by arresting VILELLA and taking him to the 41st Precinct.

31.     VILELLA was held in custody at the 41st Precinct for approximately three hours and then released without being charged with anything.

32.     Police officers of the 41st Precinct have taken VILELLA into custody without charging him with any crime approximately three times for questioning their baseless orders to not remain in front of his apartment building.

33.     The recurring NYPD practice of ordering PLAINTIFFS, their neighbors, and other Bronx residents similarly situated to not stay in front of or near their residences have caused them to risk harassment and arrest by peaceably assembling or to avoid harassment and arrest by giving up their right to assemble.

34.     In the early hours of the morning on June 7, 2014, PLAINTIFFS were present on or about the sidewalk in front of their apartment building at 894 Rogers Place with other residents of that building and neighboring buildings.

35.     Also present in front of 894 Rogers Place was RUSSELL's mother, his son, three of his sisters, and his niece.

36.     Also present in front of 894 Rogers Place was VILELLA's cousin, his goddaughter, and his goddaughter's mother.

37.     PLAINTIFFS and the other persons present frequently spent time in front of 894 Rogers Place on warm summer nights similar to the night of June 7, 2014.

38.     Plaintiffs and the other persons present in front of 894 Rogers place were all engaged in peaceful activities on the night of June 7, 2014.

39.     Some of the persons talked to each other while others played games or just watched what was going on.

40.     PLAINTIFFS and the other persons present in front of 894 Rogers were not causing any public inconvenience, annoyance or alarm on the night of June 7, 2014; nor did they recklessly create any risk thereof.

41.     PLAINTIFFS and the other persons present in front of 894 Rogers neither harbored any intention to cause public inconvenience, annoyance or alarm, or to recklessly create a risk thereof, on the night of June 7, 2014.

42.     PLAINTIFFS and the other persons present in front of 894 Rogers Place did not obstruct pedestrian traffic along the sidewalk or into the apartment building at 894 Rogers Place.

43.     At approximately 1:00 a.m., the defendant police officers approached PLAINTIFFS and the other persons on or about the sidewalk in front of 894 Rogers Place.

44.     The defendant police officers told PLAINTIFFS and the other persons present, in sum and substance, to "get off the street" and to "go inside" to their apartments.

45. The defendant police officers told PLAINTIFFS and the other persons present, in sum and substance, that they were giving a "lawful" order and that anyone who did not comply would be arrested.

46. There was no legitimate basis for the defendant police officers purportedly "lawful" order.

47. RUSSELL responded to the defendant police officers' order to "go inside" by asking them their basis for giving that order.

48. RUSSELL further informed the officers that he lived at 894 Rogers Place.

49. The defendant police officers responded, in sum and substance, that RUSSELL should go inside or the police officers would arrest him.

50. RUSSELL stated, in sum and substance, that no one was doing anything unlawful and that the police officers could not order them to go inside for no reason.

51. RUSSELL further stated that someone should call Internal Affairs to report the misconduct the defendant police officers were perpetrating.

52. One of the defendant police officers then said, in sum and substance, "Lock him up."

53. The defendant police officers then violently seized RUSSELL and placed him in handcuffs.

54. The defendant police officers then began to lead RUSSELL to a police car.

55. When VILELLA noticed the defendant police officers taking RUSSELL away in handcuffs, he took out his cell phone and began to record the event.

56.     While VILELLA was recording RUSSELL being placed in a police car, VILELLA was tackled from behind by several defendant police officers, causing him to fall to the ground and drop his cell phone.

57.     As a result of being tackled to the ground, VILELLA's knee was scraped on the sidewalk causing it to bleed.

58.     The defendant police officers then handcuffed VILELLA and placed him in a police car.

59.     PLAINTIFFS were taken to the 41st Precinct.

60.     At the 41st Precinct, PLAINTIFFS were processed and then confined to a holding cell.

61.     Upon information and belief, when the defendant police officers processed PLAINTIFFS, they claimed PLAINTIFFS had committed the offense of "*Attempted* Disorderly Conduct: Refusing to Move On" (emphasis added).

62.     At approximately 8:00 a.m., PLAINTIFFS were released from police custody with a Desk Appearance Ticket.

63.     The Desk Appearance Ticket given to PLAINTIFFS directed them to appear at the Bronx County Supreme Court, Criminal Term, on August 12, 2014.

64.     PLAINTIFFS appeared at the Bronx County Supreme Court, Criminal Term, on August 12, 2014.

65.     At that appearance, PLAINTIFFS were formally charged with NYPL 240.60(6), Disorderly Conduct, Refusal to Move.

66.     PLAINTIFFS pled "Not guilty" to the criminal charges against them.

67.     PLAINTIFFS were then released on their own recognizance.

68.     PLAINTIFFS were thereafter compelled to return to Bronx County Criminal Court three (3) times.

69.     At PLAINTIFFS' last court appearance, on or about November 20, 2014, all charges against PLAINTIFFS were dismissed.

70.     PLAINTIFFS were not engaged in any activities that were in violation of any law during the events described above and defendants had no probable cause to arrest PLAINTIFFS.

71.     At all times relevant herein, the individual defendant police officers were engaged in a joint venture.   The individual police officers assisted each other in performing the various actions described and lent their physical presence and the support and authority of their office to each other during said events.

72.     Defendants' conduct caused PLAINTIFFS to suffer loss of liberty, emotional and psychological pain, embarrassment, humiliation, harm to their reputations, and deprivation of their constitutional rights.

**COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW**

73.     PLAINTIFFS' counsel electronically filed Notices of Claim on behalf of PLAINTIFFS upon the CITY via the New York City Comptroller's eClaim system at the New York City Comptroller's Website on January 28, 2015, within ninety days of the November 20, 2014 dismissal of PLAINTIFFS' criminal charges.

74.     More than thirty days have elapsed since PLAINTIFFS served their Notices of Claim and the CITY has not offered adjustment or payment thereof.

75.     This action is filed within one year and ninety days of the events giving rise to PLAINTIFFS' state law claims.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 – Violations of Fourth and Fourteenth Amendment Rights
### (Individual Defendants)

76.     PLAINTIFFS reallege and incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

77.     In committing the acts and omissions complained of herein, defendants acted under color of state law to deprive PLAINTIFFS of certain constitutionally protected rights under the First, Fourth and Fourteenth Amendments to the United States Constitution, including, but not limited to:

a.   the right to be free from unreasonable search and seizure of their persons;

b.   the right to be free from excessive force;

c.   the right to be free from arrest without probable cause;

d.   the right to be free from false imprisonment, that being wrongful detention without good faith, reasonable suspicion, or legal justification, and of which detention PLAINTIFFS were aware and to which they did not consent;

e.   the right to be free from the lodging of false criminal charges against them by police officers;

f.   the right to be free from malicious prosecution by police officers, that being prosecution without probable cause that is instituted with malice and that ultimately terminated in PLAINTIFFS' favor; and

g.   the right to be free from deprivation of liberty without due process of law.

78.     As a direct and proximate result of defendant NYPD police officers CALERO's and DOES' deprivation of PLAINTIFFS' constitutional rights, PLAINTIFFS suffered the injuries and damages set forth above.

79.    The unlawful conduct of defendants CALERO and DOES was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

**SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983 – Violations of First Amendment Rights**
**(Individual Defendants)**

80.    PLAINTIFFS reallege and incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

81.    PLAINTIFFS were aware of their constitutional right to peaceably assemble, which included peaceably assembling in front or near their own apartment building.

82.    PLAINTIFFS were aware of their constitutional right to speak with and ask questions of police officers.

83.    PLAINTIFFS were also aware of their constitutional right to digitally record a police officers' action, so long as the safety of the police officers or other persons were not directly endangered.

84.    Defendants CALERO and DOES physically attacked RUSSELL and arrested him because he exercised his right to peaceably assemble in front of or near his apartment building and because he questioned why the police officers had, *inter alia*, ordered him and his neighbors to go inside their apartment buildings without a reason.

85.    Defendants CALERO and DOES physically attacked VILELLA and arrested him because he exercised his right to digitally record the police officers unlawful arrest of RUSSELL.

86.     By virtue of the foregoing, defendants CALERO and DOES intentionally deprived PLAINTIFFS of their rights secured by the First Amendment of the United States Constitution and, as such, are liable to PLAINTIFFS under 42 U.S.C. § 1983.

87.     As a direct and proximate result of being deprived of their constitutional rights, PLAINTIFFS suffered the injuries and damages set forth above.

88.     The unlawful conduct of defendants CALERO and DOES was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

### THIRD CAUSE OF ACTION
### *Monell* 42 U.S.C. § 1983 – Claim Against Defendant CITY
### For The Actions Of The NYPD Towards RUSSELL

89.     PLAINTIFFS reallege and incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

90.     The unconstitutional conduct of defendants CALERO and DOES was directly and proximately caused by policies, practices, and/or customs devised, implemented, enforced, encouraged, and sanctioned by the CITY and its agency, the NYPD.

91.     Defendant CITY and the NYPD, by their policy-making agents, servants, and employees, authorized, sanctioned and/or ratified defendants CALERO and DOES wrongful acts, failed to prevent or stop those acts, and/or allowed or encouraged those acts to continue.

92.     The aforementioned policies, practices, and/or customs of the CITY and NYPD include, *inter alia*, arresting individuals without reasonable suspicion or probable cause in order to punish the arrestee for the arrestee's failure to display the degree of

deference or subservience demanded by the arresting officer.  Such unlawful arrests are commonly known as "contempt of cop" arrests.

93.     The existence of the aforementioned customs, policies and practices can be inferred from repeated occurrences of similar unlawful "contempt of cop" arrests, as documented below:

a.  *Micken-Taylor v. City of New York*, 09-cv-7923 (RWS).  On May 18, 2007, plaintiff was falsely arrested for criminal trespass and disorderly conduct in retaliation for filing a Civilian Complaint Review Board complaint against a police officer.  Prior to her arrest, plaintiff says she asked the police officer why he was arresting her, and the police officer responded, "[b]ecause you're looking at my badge."

b.  *Warren v. City of New York*, 08-cv-03815 (E.D.N.Y.).  On June 21, 2007, plaintiffs were falsely arrested for disorderly conduct after questioning why police officers were severely beating a handcuffed male and asking the police officers to stop.  All charges against plaintiff were subsequently dismissed.  *See* John Marzulli, *Lawyer couple get $360,000 payout from city over false arrest by NYPD sergeant*, New York Dailey News (March 14, 2012), available at http://www.nydailynews.com/new-york/lawyer-couple-360-000-payout-city-false-arrest-nypd-sergeant-article-1.1078045.

c.  *Kabba v. City of New York*, 10-cv-05606 (E.D.N.Y.). On August 19, 2010, four men were falsely arrested and charged with marijuana possession because people (not plaintiffs) laughed at the police.  The police officers had unsuccessfully attempted to apprehend a person on foot who had thrown out a bag containing marijuana.  When spectators to the failed pursuit laughed at the police officers, one of the officers said, "If you think that's funny, watch what I do to them," and arrested the four plaintiffs.  The criminal charges were eventually dropped.  *See* John Marzulli, *Four Queens men sue NYPD after being held for 30 hours, busted for laughing at cops*, New York Daily News (Dec. 13, 2010), available at http://www.nydailynews.com/new-york/queens-men-sue-nypd-held-30-hours-busted-laughing-cops-article-1.474811

d.  On April 3, 2011, Christina Thede was falsely arrested for, *inter alia,* disorderly conduct after verbally complaining to a plain clothes detective for opening his car door in the bike lane, which almost caused Ms. Thede to crash her bike.  *See* Julie Gerstein, *First NYC Cops Will Almost Kill You, Then They Will Arrest You*,

New York Magazine (April 7, 2011), available at http://nymag.com/daily/intelligencer/2011/04/nyc_cops_will_almost_kill_you.html.

e.   *Peralta v. City of New York*, 150280/2013, (Sup. Ct., N.Y. Cty).  In October, 2011, plaintiff was falsely arrested for disorderly conduct after he waived his middle finger at an unmarked police car that was honking at him while he was trying to park his car.  The charges against plaintiff were later dismissed.  *See* Barbara Ross, Kerry Burke, *GOLD FINGER: Flipping a cop the bird may land culprit $2.1 million in civil rights lawsuit,* New York Dailey News (Jan. 14, 2013), available at  http://www.nydailynews.com/new-york/ss-article-1.1240116.

f.   *People v. Gonzalez*, (Sup. Ct., N.Y. County).  In 2011, Richard Gonzalez was falsely arrested for disorderly conduct for cursing and gesticulating at officers who were blocking the stairway in a subway station.  All charges against Mr. Gonzalez were dismissed by the Court of Appeals, which found there was no support in the record before it to support the charge of disorderly conduct. *People          v.          Rivera*,          available          at http://courts.state.ny.us/ctapps/Decisions/2015/Jun15/76mem15-Decision.pdf.

g.   *Yahnick v. City of New York*, 13-cv-01534 (E.D.N.Y.).   On December 23, 2011, plaintiff was falsely arrested for disorderly conduct after he verbally complained about being stopped and searched without probable cause. One of the arresting officers told plaintiff, "You want to be a smartass and make accusations, you go to jail."  The criminal charges against plaintiff were eventually dismissed.  *See* Dale Eisinger, John Marzulli, *Brooklyn man gets $50,000 settlement after cops ruin his Christmas*, New York Dailey  News  (Dec.  11,  2014),  available  at http://www.nydailynews.com/new-york/brooklyn/city-pays-brooklyn-man-50g-ruining-family-holiday-article-1.2041067.

h.   *Runnells v. City of New York*, 13-cv-02904 (KBF) (S.D.N.Y.).  On April 27, 2012, plaintiff was first falsely arrested for disorderly conduct for digitally recording an NYPD traffic check point and falsely arrested again for disorderly conduct when he attempted to get the name and badge number of the police officer who had arrested him.  All criminal charges against plaintiff were dismissed in the New York City Criminal Court, Bronx County, after a bench trial.

i.   *Charles v. City of New York*, 12-cv-06180 (E.D.N.Y.).  On June 5, 2012, plaintiff was falsely arrested for disorderly conduct after questioning why police officers had stopped and were searching three young males, and attempting to record the stop with her cell

phone. While plaintiff was detained, a police officer told her, "This is what happens when you get involved." The charges against plaintiff were later dismissed. *See* John Del Signore, *Brooklyn Woman Sues NYPD For Arresting Her Because She Filmed Stop-And-Frisk*, Gothamist (Dec. 17, 2012), available at http://gothamist.com/2012/12/17/activist_sues_nypd_for_arresting _he.php.

j.  *Richt v. City of New York*, 14-cv-01977 (PKC)(VMS) (E.D.N.Y.). On December 19, 2013, plaintiff was falsely arrested for disorderly conduct after questioning police officers' actions of ordering a car to move from a bus lane and then parking in the bus lane themselves while they bought food. The disorderly conduct charges were eventually dismissed. *See* John Marzulli, *Brooklyn law student arrested for questioning cops parked at a bus stop to buy food, sues city for false arrest*, New York Daily News (March 29, 2014), available at http://www.nydailynews.com/new-york/brooklyn/brooklyn-law-student-arrested-questioning-cops-parked-bus-stop-article-1.1738677.

k.  *Fields v. City of New York*, 14-cv-1201 (E.D.N.Y.). Plaintiff was falsely arrested on February 22, 2014, for, *inter alia*, disorderly conduct after laughing at a police officer who was yelling and being disrespectful to his friend and for trying to take a picture of the police officer's badge number. The charges against plaintiff were eventually dismissed. *See* Matt Taibi, *A Bad Arrest, on Video*, Rolling Stone (May 26, 2015), available at http://www.rollingstone.com/politics/videos/a-bad-arrest-on-video-jaleel-fields-20150526.

l.  *Huq v. City of New York*, 14-cv-07081 (LTS) (S.D.N.Y.). On July 19, 2014, plaintiff was waiting outside a restaurant when police officers approached her and ordered her to move. When plaintiff told the officers that she was waiting for her husband to return from using the restroom, the police officers falsely arrested her and charged her with disorderly conduct. The charges against plaintiff were subsequently dismissed. *See* Dareh Gregorian, *Former top lawyer for city Public Advocate says NYPD cops rough her up during unwarranted arrest: suit*, New York Dailey News (Sept. 3, 2014), available at http://www.nydailynews.com/new-york/lawyer-public-advocate-cops-roughed-suit-article-1.1926329.

m.  *Bonjean v. City of New York*, (Sup. Ct., N.Y. Cty). In August, 2014, plaintiff was falsely arrested for disorderly conduct after telling her friends that they did not have to turn over their identification to police officers. The disorderly conduct charge was later dismissed. *See* Barbara Ross, *Former star of 'SLUT: The Play' wants to sue NYC for $2 million over wrongful arrest*, New York Daily News (June 12, 2015), available at

http://www.nydailynews.com/new-york/ex-star-slut-play-sue-wrongful-arrest-article-1.2255429.

94.     The existence of the above-described unlawful policies, practices, and/or customs is known to, encouraged, and/or condoned by supervisory and policy-making officers and officials of the NYPD and the CITY.

95.     The foregoing acts of defendant police officers CALERO and DOES deprived RUSSELL of federally protected rights, including, without limitation, the constitutional rights enumerated in paragraphs 74 through 85 above.

96.     The CITY knew or should have known that the acts alleged herein would deprive RUSSELL of his rights, in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution.

97.     The CITY is directly liable and responsible for the acts of defendants CALERO and DOES because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulations of the CITY and NYPD and to require compliance with the Constitution and the laws of the United States.

98.     Despite their knowledge of these policies, practices, and customs, the supervisory and policymaking officials of the CITY and NYPD perpetuated and failed to take steps to terminate them, did not discipline or otherwise properly supervise the individual NYPD police officers who allowed and engaged in them, did not effectively instruct, train and/or supervise such police officers with regard to the proper constitutional and statutory requirements in the exercise of their authority, but instead

sanctioned the offending practices and policies with a deliberate indifference to their effect on an individual's constitutional rights.

99.     As a result of the above described policies, practices, and customs, NYPD police officers, including defendants CALERO and DOES, were led to believe that their misconduct would not be investigated or sanctioned, but would instead be tolerated and condoned.

100.     Defendant CITY and the NYPD knew to a moral certainty that the issue of police misconduct in making retaliatory "contempt of cop" arrests would continue to arise; that the history of police misconduct in making retaliatory "contempt of cop" arrests demonstrated the need for further instruction, training, supervision, and discipline; and that continuing to allow and condone this police misconduct would cause constitutional injury to law-abiding citizens.

101.     The wrongful policies, practices, and customs complained of herein, demonstrate a deliberate indifference on the part of the policymakers of the CITY and NYPD to the constitutional rights of persons within the city, and were the direct and proximate cause of the violations of RUSSELL's rights and the injuries and damages to RUSSELL alleged herein.

### FOURTH CAUSE OF ACTION
*Monell* **42 U.S.C. § 1983 – Claim Against Defendant CITY**
**For The Actions Of The NYPD Towards VILELLA**

102.     PLAINTIFFS reallege and incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

103.     The unconstitutional conduct of defendants CALERO and DOES was directly and proximately caused by policies, practices, and/or customs devised,

implemented, enforced, encouraged, and sanctioned by the CITY and its agency, the NYPD.

104.    Defendant CITY and the NYPD, by their policy-making agents, servants, and employees, authorized, sanctioned and/or ratified defendants CALERO and DOES wrongful acts, failed to prevent or stop those acts, and/or allowed or encouraged those acts to continue.

105.    The aforementioned policies, practices, and/or customs of the CITY and NYPD include, *inter alia*, arresting individuals without reasonable suspicion or probable cause in retaliation for their exercising their First Amendment right to monitor, document, and/or record police activities and/or misconduct.

106.    The existence of the aforementioned customs, policies and practices can be inferred from repeated occurrences of similar unlawful conduct, as documented below:

a.  *Stern v. City of New York*, 12-cv-04863 (SAS) (S.D.N.Y.). On July 15, 2011, plaintiffs were dancing on an empty subway platform when they were approached by police officers who told them to stop. When one of the plaintiffs took out a camera to record the interaction, the police officers tackled him. Plaintiffs were then handcuffed and falsely charged with disorderly conduct. The charges against plaintiffs were adjourned in contemplation of dismissal and then dismissed and sealed. *See* Kathianne Boniello, *Couple handcuffed, jailed for dancing on subway platform: lawsuit*, New York Post (July 8, 2012), available at http://nypost.com/2012/07/08/couple-handcuffed-jailed-for-dancing-on-subway-platform-lawsuit/

b.  *Runnells v. City of New York*, 13-cv-02904 (KBF) (S.D.N.Y.). On April 27, 2012, plaintiff was first falsely arrested for disorderly conduct for recording an NYPD traffic check point, and falsely arrested again for disorderly conduct when he attempted to get the name and badge number of the police officer who had arrested him while recording his interaction with the police. Police officers deleted the footage from plaintiff's camera after each arrest. All criminal charges against plaintiff were dismissed in the New York City Criminal Court, Bronx County, after a bench trial.

c.  *Charles v. City of New York*, 12-cv-06180 (E.D.N.Y.).  On June 5, 2012, plaintiff was falsely arrested for disorderly conduct after questioning why police officers had stopped and were searching three young males, and for attempting to record the stop with her cell phone. While plaintiff was detained, a police officer told her, "This is what happens when you get involved." The charges against plaintiff were later dismissed.  *See* John Del Signore, *Brooklyn Woman Sues NYPD For Arresting Her Because She Filmed Stop-And-Frisk*, Gothamist (Dec. 17, 2012), available at http://gothamist.com/2012/12/17/activist_sues_nypd_for_arresting _he.php.

d.  *George v. City of New York*, 13-cv-03108 (KAM)(SMG), (E.D.N.Y.).  On June 14, 2012, plaintiff observed three youths being searched by the police and began recording the interaction with his cell phone.  Plaintiff advised the youths to get the officers' badge numbers.  The officers responded by pulling plaintiff out of his car and stating, "Now we're going to give you what you deserve for meddling in our business and when we finish with you, you can sue the city for $5 million and get rich, we don't care." Plaintiff was falsely charged with disorderly conduct.  *See* Scott Heins, *$125k Awarded To Brooklyn Man Arrested While Videotaping Stop-And-Frisk*, The Gothamist (Aug. 18, 2014), available                                                                at http://gothamist.com/2014/08/18/125k_awarded_to_brooklyn_man _arrest.php

e.  *Stolarik v. City of New York*, 15-cv-05858 (RMB) (S.D.N.Y.).  On August 4, 2012, plaintiff, a photojournalist, was photographing a street fight, when he was approached by police officers who told him to stop taking photographs.  After plaintiff identified himself as a photojournalist and continued taking pictures, police officers beat plaintiff up and falsely arrested him for various charges which were eventually dismissed.  *See* Joe Coscaelli, *Times Photographer Roughed Up By NYPD Just Wants His Stuff Back*, New York Magazine (Aug. 6, 2012), available at http://nymag.com/daily/intelligencer/2012/08/robert-stolarik-new-york-times-photographer-beaten-up-nypd.html.

f.  Diego Ibanez was stopped and handcuffed after filming police officers arrest two young African American males in the subway. The police told Ibanez that filming them was illegal and that he could spend the night in jail or delete the footage he had taken. Ibanez deleted the footage, but was still falsely charged with disorderly conduct.  *See* Tanya Geneva et al, *Nine terrifying facts about America's biggest police force*, at "*4. Targeting Activists,*" Salon (Sep. 28, 2012), available at

http://www.salon.com/2012/09/28/nine_terrifying_facts_about_am
ericas_biggest_police_force/.

g. *Zayas v. City of New York*, 13-cv-0808 (JMF) (S.D.N.Y.).  On
November 27, 2012, plaintiff was photographing police frisk a
Hispanic male in the Grand Central subway station when police
officers seized him and forcibly removed him from the station.
When plaintiff complained, the officers falsely arrested him for
disorderly conduct.  That charge was later dismissed.  *See* Daniel
Beekman, *Photographer trying to shoot stop and frisk sues NYC
over police harassment*, New York Dailey News (Dec. 13, 2013),
available        at        http://www.nydailynews.com/news/justice-
story/photog-shooting-frisking-sues-nyc-harassment-article-
1.1546548.

h. In January of 2013, Shimon Gifter was filming in the vicinity
where police were arresting young men when a police officer
accosted Gifter, took his camera and cell phone and handcuffed
him. The police officer then deleted the footage from Gifter's
camera and threw it on the ground breaking it. Gifter was
eventually released after a witness complained to a community
affairs officer at the 70th Precinct about what was happening.  *See*
Boruch Shubert, *Police Brutality in Midwood?*, The Jewish Voice
(Jan.        24,        2013),        available        at
http://jewishvoiceny.com/index.php?option=com_content&view=a
rticle&id=2978:police-brutality-in-
midwood&catid=106:international&Itemid=289; Yoel Bitelman et
al,  *Orthodox photographer assaulted by a police officer in New
York – demands compensation*, bhol.co.il (Jan. 22, 2013), available
at http://www.bhol.co.il/article.aspx?id=49869.

i. In March, 2013, Ed Garcia Conde was falsely arrested by police
officers when he began to film an interaction between the police
and his friend.  Conde was given summonses falsely alleging an
open container of alcohol and for creating a dangerous situation,
but was told by the officer processing his arrest not to worry
because he would not show up in court.  *See* Ben Yakas, *Video:
Bronx Man Hauled To Jail For Exercising His Right To Videotape
Cops*, The Gothamist (Mar. 16, 2013), available at
http://gothamist.com/2013/03/16/video_bronx_man_hauled_to_jail
_for.php.

j. *Thomas v. City of New York*, 13-cv-06139 (SJ)(LB), (E.D.N.Y.).
On April 19, 2013, plaintiff was filming the exterior of the 72nd
Precinct for a documentary he was making when a police officer
approached him and falsely arrested him.  The charges against
plaintiff were later dismissed.  *See* Jane Janeczko, *Justin Thomas,
SVA Student Sues NYPD Over Wrongful Aerrest After Filming
Outside Precinct (VIDEO)*, The Huffington Post (Nov. 7, 2013),

available at http://www.huffingtonpost.com/2013/11/07/justin-thomas-nypd_n_4234044.html.

k. *Thomas v. City of New York*, 15-cv-02594 (MKB)(RML) (E.D.N.Y.). On January 4, 2013, June 15, 2013, and February 15, 2014, plaintiff was falsely arrested for recording police activities and charged, *inter alia*, with disorderly conduct. All charges against plaintiff were dismissed. *See* Meredith Hoffman, *Photographer Arrested Taking Pictures of Police Station House in Bushwick*, DNAinfo (June 20, 2013), available at http://www.dnainfo.com/new-york/20130620/bushwick/photographer-arrested-taking-pictures-of-police-station-house-bushwick;Carlos Miller, NYPD Cop Attacks Man for Video Recording Him, Deleting His Footage, *but Man Recovers Footage*, Photography Is Not A Crime (Feb. 17, 2014), available at http://photographyisnotacrime.com/2014/02/nypd-cop-attacks-man-video-recording-deleting-footage-man-recovers-footage/.

l. *Wilson v. City of New York*, 14-cv-09326 (PAE) (S.D.N.Y.). On August 26, 2013, Jonathan Harris attempted to record an interaction between police officers and some young girls in a park. When an officer noticed Harris, he yelled, "Come here, you little motherf—er… You like Recording?" Harris was beaten and maced by the police officers and falsely charged, *inter alia*, with disorderly conduct. Harris was acquitted of all charges against him at trial. *See* Jennifer H. Cunningham, *Teens say they were beaten by cops in Bronx park*, New York Dailey News (Aug. 29, 2013), available at http://www.nydailynews.com/new-york/bronx/teens-mauled-cops-article-1.1440394

m. *Basinski v. City of New York*, 14-cv-01057 (LTS)(DCF), (E.D.N.Y.). On September 19, 2013, plaintiff was arrested and falsely charged, *inter alia*, with disorderly conduct for recording a police interaction with a street vendor. The charges against plaintiff were adjourned in contemplation of dismissal. *See* Colin Moynihan, *Street Vendors Protest Treatment by Police*, New York Times (Oct. 2, 2013), available at http://www.nytimes.com/2013/10/03/nyregion/street-vendors-protest-treatment-by-police.html?_r=1.

n. *Goodman v. City of New York*, 14-cv-5261 (CM), (S.D.N.Y.). On September 25, 2013, plaintiff was falsely arrested after police officers noticed her using her cell phone to record police activity. All charges against plaintiff were eventually dismissed. *See* Daniel Beekman, *Retired legal secretary files suit alleging NYPD violates the First Amendment by arresting citizens for filming them*, New York Dailey News (July 15, 2014).

o. *Disisto v. City of New York*, 15-cv-03296 (GHW), (S.D.N.Y.).  On March 12, 2014, plaintiff attempted to use his cell phone to record police searching his friend.  When the police noticed plaintiff filming them, they falsely arrested him and, while transporting him to the precinct, threw the cell phone out the police car window. All charges against plaintiff were eventually dismissed.  *See* Nathan Tempey, *A Friendly Reminder That It's Legal To Film The Police*, The Gothamist (April 29, 2015), available at http://gothamist.com/2015/04/29/cop_watch.php.

p. On May 14, 2014, it is announced that members of the NYPD oversight panel agreed to study incidents where officers are improperly interfering with bystanders who record arrests.  The Civilian Complaint Review Board was reported to have agreed to the study after board member Daniel Gitner said he had seen several cases concerning the issue.  *See* Phil Helsel, *New York City Officer Reactions to Being Recorded Will Be Studied*, Wall Street Journal (May 14, 2014), available at http://www.wsj.com/news/articles/SB10001424052702303908804579562132510758164

107.   The existence of the above-described unlawful policies, practices, and customs is known to, encouraged, and/or condoned by supervisory and policy-making officers and officials of the NYPD and the CITY.

108.   The foregoing acts of defendant police officers CALERO and DOES deprived VILELLA of federally protected rights, including, without limitation, the constitutional rights enumerated in paragraph 74 through 85 above.

109.   The CITY knew or should have known that the acts alleged herein would deprive VILELLA of his rights, in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution.

110.   The CITY is directly liable and responsible for the acts of defendants CALERO and DOES because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to

enforce the rules and regulations of the CITY and NYPD, and to require compliance with the Constitution and the laws of the United States.

111.   Despite their knowledge of these policies, practices, customs, and usages the supervisory and policymaking officials of the CITY and NYPD perpetuated and failed to take steps to terminate them, did not discipline or otherwise properly supervise the individual NYPD police officers who allowed and engaged in them, did not effectively instruct, train and/or supervise such personnel with regard to the proper constitutional and statutory requirements in the exercise of their authority, but instead sanctioned the offending practices and policies with a deliberate indifference to their effect on an individual's constitutional rights.

112.   As a result of the above described policies, practices, and customs, NYPD police officers, including defendants CALERO and DOES, were led to believe that their misconduct would not be investigated or sanctioned, but would instead be tolerated and condoned.

113.   Defendant CITY and the NYPD knew to a moral certainty that the issue of the police misconduct of retaliatory arrests against persons documenting police activities would continue to arise; that the history of police misconduct in making retaliatory arrests against persons documenting police activities demonstrated the need for further instruction, training, supervision, and discipline; and that continuing to allow and condone this police misconduct would cause constitutional injury to citizens lawfully exercising their First Amendment rights .

114.   The wrongful policies, practices, and customs complained of herein, demonstrate a deliberate indifference on the part of the policymakers of the CITY and

NYPD to the constitutional rights of persons within the city, and were the direct and proximate cause of the violations of VILELLA's rights and the injuries and damages to VILELLA alleged herein.

## FOURTH CAUSE OF ACTION
### Violations of the New York State Constitution
### (Individual Defendants)

115.    PLAINTIFFS reallege and incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

116.    Such conduct breached the protections guaranteed to PLAINTIFFS by the New York State Constitution, including but not limited to, Article I, Secs. 6, 8, 9, 11, and 12, and including the following rights:

        a.    freedom of speech;

        b.    right to assemble;

        c.    freedom from the lodging of false charges against them by police officers and prosecutors, including on information and belief, by some or all of the individual defendants;

        d.    freedom from malicious prosecution by police officers and prosecutors, that being prosecution without probable cause that is instituted with malice and that ultimately terminated in PLAINTIFFS' favor; and

117.    The deprivation of PLAINTIFFS' rights under the New York State Constitution resulted in the injuries and damages set forth above.

## FIFTH CAUSE OF ACTION
### Malicious Prosecution
### (Individual Defendants)

118.    PLAINTIFFS reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

119.   Defendant NYPD police officers CALERO and DOES, through the foregoing acts, maliciously commenced a criminal proceeding against PLAINTIFFS, which ended in PLAINTIFFS' favor, without probable cause to believe PLAINTIFFS were guilty of the crimes charged.

120.   Defendant NYPD police officers CALERO and DOES committed the foregoing acts intentionally, willfully, and maliciously, and are therefore liable for punitive damages.

## FOURTH CAUSE OF ACTION
### *Respondeat Superior*

121.   PLAINTIFFS reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

122.   At all relevant times, defendant NYPD police officers CALERO and DOES were employees of the City and were acting within the scope of their employment.

123.   The City is therefore vicariously liable under the doctrine of r*espondeat superior* for the actions of defendant NYPD police officers CALERO and DOES set forth herein.

## DEMAND FOR RELIEF

**WHEREFORE**, PLAINTIFFS demand the following relief against the defendants, jointly and severally:

(a)   an order for injunctive relief:

    a. enjoining the NYPD from continuing its policy, practice and/or custom of unlawfully ordering persons not to peaceably assemble in front of or near their residences and falsely arresting persons who question such baseless orders;

b. requiring the City and NYPD to institute and implement improved policies and programs with respect to training, supervision, and discipline designed to eliminate the NYPD's policy, practice, and/or custom of unlawfully ordering persons not to peaceably assemble in front of their residences and falsely arresting persons who question such baseless orders.

(b) compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(c) punitive damages from defendant NYPD police officers CALERO and DOES to the extent allowable by law;

(d) attorney's fees;

(e) the costs and disbursements of this action;

(f) interest; and

(g) such other and further relief as this Court deems just and proper.


Dated:  New York, New York
        September 3, 2015

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, Suite 2600
New York, New York 10016
(212) 490-0400


  /s/Myron Beldock
Myron Beldock
Marc A. Cannan

*Attorneys for Plaintiffs Ricardo Russell and Robert Vilella*